## H. S. LYTER v. CITY OF LOUISVILLE.

**Improvement Contract.**

> Where a contract for a public improvement is entered into, but on account of high water not completed within the time agreed upon, but the city permitted its completion after the time when it should have been completed, and received it from the contractor, the city is liable for the contract price.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

February 28, 1880.

OPINION BY JUDGE PRYOR:

The specifications defining the nature of the work and made part of the contract provide that no allowance will be made for caving or sliding unless it is caused by some alteration by the city engineer in the depth or width of the trench, and not by the peculiarity of the soil. For any extra work the engineer's estimate of the cost and ten per cent. added is the amount to which the appellant is entitled. By the terms of the contract the appellant undertook to complete the work within ninety days, unless further time should be given him by the city authorities. It was certainly contemplated by all parties when the contract was made that the time for fulfilling it was ample, and but for the prevention of its execution by the sudden or unexpected rise in the river it perhaps would have been completed within the time limited by the contract.

The city, however, permitted its completion after the time had elapsed, and received it, as it now contends under the contract, and there is no reason why appellant should not recover if the city has failed to pay him. Much of the work had been done by appellant within the ninety days, but by reason of the cessation of the work made necessary by the high water there was no labor performed under the contract from November, 1873, until June, 1874; and when the appellant began his work in June he found the trenches filled with sand, the sides or banks of the trenches fallen in, so as to require much labor and a considerable expenditure of means to place the work in the condition it was in November, 1873.

It is insisted that much of this extra labor was caused by permitting the water from Paddy's Run to escape through this sewer so as to drain a large area of ground, and that this constant flow of water caused the banks to cave in and additional excavation necessary.

33

That this fact contributed to increase the labor and expenditure by appellant we think is established, but that much of the extra labor was caused by the overflow from the river, and the springs that made their appearance within the sewer, and the washings caused by the rains during the winter and spring, is equally certain, and the appellant having received cost for this extra labor and ten per cent. added we cannot well see why he should complain. The extra excavation and other work was not the result of any alteration made by the city or its engineer, but was caused by the washings through and in the sewer, after the work had ceased in the fall of 1873. This made the extra work and extra excavation necessary, and as the misfortune caused by the high water has resulted in loss to both parties, although the city may by its action have increased the amount of labor necessary to its completion, we think the appellant has been fully compensated by the payment to him of the value of his labor and ten per cent. added. If there had been no rise in the river, or the springs had not made their appearance and injured the work within the ninety days, it would have been the duty of the contractor to have still complied with his contract without extra compensation, and when the time for completing the work has expired, and he receives this extra compensation based on the idea that the city contributed to produce the loss, we think he has received all that he is entitled to in this particular. It appears, however, that in the execution of this work the appellant purchased 14,000 feet of dimension lumber at the price of $65 per thousand, and that the lumber was hauled on the ground to be used in making an apron for the sewer.

The specifications provided for this lumber, and it seems to be useless for any other purpose. The city dispensed of the white oak apron and substituted another, leaving the timber on the ground, and of little, if any, value to the appellant. Although the city had the right to change the work in the mode of its execution, it was too late after the lumber had been hauled upon the ground to say to the appellant we will dispense with the lumber and you, the contractor, are entitled to no compensation. It should have been, and must be regarded (the delivery of this lumber) as a part execution of the work, as much so as if the city had ordered the white oak apron taken up after it had been laid in the trench; and while the change may have been proper, with the right on the part of the city to make the alteration, it must pay the appellant the damages he has sustained. The lumber is the property of the city, and its value should

be accounted for to the appellant. This is $900 with interest from the filing of the petition. There is no dispute but that the lumber was dispensed with, and that it was left on the grounds; or if not, the testimony is conclusive on this point.

We see nothing in this case authorizing any damages for the appellant other than the value of the lumber. He received upwards of $4,000 for extra work, and in this sum is included $864 for sloping banks and opening trench.

The judgment is *reversed* and cause remanded with directions to enter a judgment for the appellant for $900 with interest from the date of filing this petition.

*Russell & Helm, for appellant.   T. L. Bennett, for appellee.*